May it please the court. My name is Matthew Carter. At the council table with me is Christina Miller. We represent Carrington Mortgage Services. There are similar issues in this case to the prior cases that have been heard by the court this morning, but there are some very notable differences and I'm going to try and keep my argument to those. So, on the first issue that the court wanted argument, they asked about whether or not there was unfairness, oppression, or fraud that would justify equitable relief under Nevada law. We've talked a lot about Shadow Canyon this morning. I want to clarify something that was said in the first case about unfairness, and that is that where the disparity between price and value is great, there's slight evidence of unfairness. It's a very low quantum of evidence. And in this case, the disparity was... Just a minute. Are there any cases that have found that unfairness? Your Honor, I am not remembering any specific appellate cases that hold that unfairness. I know there's been a number of state court cases where the issue's been litigated, and I believe there was one just recently that may have gotten remanded in state court. It was Wells Fargo or U.S. Bank. I know that doesn't help the court. These are all called Wells Fargo or U.S. Bank. But I can't recall any explicitly. The most definitive guidance on unfairness is the footnote 11 of Shadow Canyon, which talks about the lack of notice, and there's some other examples that are given in there. Now, the other cases that the court has had this morning have all been about lack of notice. This isn't one of those cases. This is a case where we actually have a tender. This is the case where my client's predecessor in interest, Bank of America, sent a letter and a check for nine months of assessments. That's $503.10 to the HOA trustee. And that, again, was NAS, as it was in the last case, Your Honors. And I will also... Right, and then insisted that they only had to pay nine months, and insisted... I mean, really continued to insist that, and didn't acknowledge the other components of the statute, right? Well, yes, Your Honor. And what my client was going off of was the language of the statute, which... Did you ever represent in the district court that only nine months was owed? In other words, that there weren't any maintenance or nuisance abasement charges to owed? Well, I believe we conceded that that would be part of the super priority lien, Your Honor. Well, I don't know where you conceded it, but did you ever... I'm trying to figure out whether there was really an issue of fact, or whether you just kept saying, we paid nine months, and we only have to pay nine months? Because the latter is what I see over and over again. Well, Judge Christin, in this particular case, it was really one and the same. We did only have to pay nine months. There were no nuisance abasement charges. How did we know that? Right now, today, I don't know that. I've got the ledger, and there's one $25 charge for management company fee. I have no idea what that is. Was that raised? I can't find anywhere... I mean, the district... Let me cut to the chase. The district court thought you didn't. That's the basis of the district court's ruling, right? He said that the, I'll say lender, had failed to adequately defend BOA's exclusion of all fees and costs set forth in the payment demand. They merely presumed that the amount set forth in the payoff demand included more than the super priority lien portion. Your Honor, that particular statement, which is in the record at 686 to 687, that does not set forth any particular maintenance fees, which maintenance fees are a very particular thing. When they say management company, Your Honor, most of these HOA companies... Counsel, this is... I think this is going to come down to a burden of proof, so I want to be very careful about this. That's the basis for the district court's order, right? Couple that with his statement at 25, Wells Fargo Z 25. He said, SFR argued in the district court that it was entitled to a statutory presumption that it took clean title. Statutory presumption that the title was clean, and then in context, what the district court judge is saying here is that you have not come forward and shown that no maintenance or nuisance abatement were owed. So what is your response, please? The way I understood the court's ruling was a little bit different. What the court had abatement fees would have been included in that particular lien. I don't think he came to any particular decision as to what any particular line item of that ledger came to. No, what he said is that you had the burden and you hadn't met it. Well, to that extent, Your Honor, we produced the ledger and we showed what the ledger was and we compared it with the statute, and the ledger, when put up with the statute, there is only really one way to construe that particular ledger. Had there been maintenance... I don't know if there is, counsel, and I have looked in vain for this very point, so I've just offered for you. We've looked at the ledger and it has one kind of an inscrutable entry, a $25 entry that says, I think, management company fee. What is that? Well, management companies, Your Honor, HOAs generally don't run themselves. I'm not talking about generally. I'm talking about in this case, and I'm asking very specifically, why was the district court wrong that you failed to overcome this presumption, please? Because the management company is something different than the HOA. The people that actually run the day-to-day business of the HOAs, in this particular HOA... This is in the record. What you're telling me now is in the record? Your Honor, I would have to go back and I'd have to find a particular site for you on this, particularly where the HOA testifies. It's probably in the deposition transcript as well, because the management companies are the ones that run these HOAs. What the district court actually ruled is that you presume without adequate support that the amount sent forth in NAS's payoff demand included more than the superiority lien portion. Well, that it clearly did, right? Yes, Your Honor. In other words, whatever this $25 is, the whole rest of it, other than the months that you tendered. Yes. So the district court was wrong? The district court was wrong on that, Your Honor. And by the way, I don't believe anyone disputes that there was more than the super-priority lien included in that ledger, that payoff statement. No, the question is whether or not you had to pay more than the nine months. Sure, we understand that. Correct, Your Honor. And I'm just trying to figure out, in fairness to the district court, the district court is awash in these cases, doing his level best. He's invoked, I think, clearly the statutory presumption, so that's what I'm trying to get at. Yes, Your Honor. And to the extent that, I mean, also you've got to consider this from my client's point of view, in 2011, 2012, they were also doing their level best. And by the way, Bank of America was really ahead of the curve on this. This was before September of 2014, when the SFR decision came out, and Bank of America and its lawyers got together and they doubled and tripled checked and made sure, comparing the statute, what do we have to pay, because it wasn't a matter of we're just going to do nine months and that's it. It was comparing the statute. There were no entries in that ledger, and this was before the district court, Your Honor. There were absolutely no entries in that ledger that indicated any nuisance abatement. You did in your pleading motion for summary judgment in the district court note that nuisance assessment was included in stating what the law was. Yes, absolutely that would be included in the super priority rule. And then you later said all we owe is the nine months, which seems to be a pretty good way of saying because there's nothing else. Right, Your Honor. Our position is always that those would have been included, but there would have been nothing else apart from the nine months in this case, which was why the lawyers and Bank of America got together. The problem is you never said those words exactly, and therefore perhaps confused people. The district court says you never contested specifically that you didn't owe the rest of what was on this ledger. And to be fair to everyone involved, Your Honor, I don't think this was a particularly well hashed out issue by anyone below. It's the only issue in the case. It's frustrating. We're doing our level best too, but in the blue brief, I look, look, look, look, look, and your client continues to take this position that it only had to pay nine months without going into this point that Judge Berzon is raising on page 29 is the first time I see any mention of at most you say there's a question of fact. That's the first time it's raised. And so, right, a question of fact as opposed to debating this, endlessly debating this kind of uncontested issue of law, continuing to assert that it's nine months, nine months, nine months. Right. So it really is a factual question. Of course, we're at summary judgment, hence, I think this statutory presumption is no small thing. The judge said, hey, in his order, that SFR was invoking the Nevada statutory presumption that it had taken clean title and that it was your burden to overcome. Well, now the statutory presumptions of that basically that the notices are correct and that everything in there is correct. Those are not ironclad set in stone as a matter of Nevada law either. It was either the Shadowwood or the Shadow Canyon case. I can't remember. This is also not briefed on appeal to us, but I mean, it's not. So could I just ask both counsel, perhaps it would help me. I've got the statute here, but has this been construed as just the notices assumed to have been correct or is it as opposing counsel argued that the presumption is that they've got clean title and you have to overcome that? That's clearly the import of the Judge Mahan's order. Well, it's, sorry, and I may have misspoke. It's not merely the notices. The presumption also goes to the foreclosure deed upon sale and the presumption then is that the sale is validly conducted and that the statements of fact in those are also valid. But what the Nevada Supreme Court has said, and again, I apologize, this was not made clear for the court, but what Nevada Supreme Court has said that you can't just simply weaponize those presumptions and just say, okay, well, those are in there. There's no more evidence. In any event, didn't Arlington West sanction pretty much exactly what you did without invoking any presumption? In other words, in Arlington West, it seems that what happened was pretty much exactly what happened here. That's correct, Your Honor. It was true. And the court says Arlington West doesn't dispute that this amount was correctly calculated, that is at nine months equal to X amount. Then it says, the ledger did not indicate that the property had incurred any charges for maintenance or nuisance abatement, which are the only other fees, therefore, the tender was sufficient. It didn't require going beyond the face of the ledger. That is correct, Your Honor. And I believe this is almost an identical situation to the Arlington West case. It would be if you'd made the argument that those weren't due and had talked to us about what is that other $25 fee. I don't mean to belabor the point, but that's... All right. Suppose you're right about all this. What is the remedy? What do we do? Well, the remedy would be for the court to equitably set aside the results of the foreclosure sale. It would essentially be... Why wouldn't we just rule that the district court was an error because they're a contested issue of fact about whether or not the lien was satisfied? The court could do that as well. And that would also... All right. I suppose that the district... I mean, it seems to me pretty foregone conclusion that if you go into the facts, you're right. So whether we do it by a remand or whether we do it the other way. But then what happens? If it's all to be concluded either by us or by the district court. That's right. I assume it's an issue that would have to be addressed by the district court. There's really two possibilities. The one that would generally happen is if one had equitably sort of unwound the sale to the extent that we had made the super priority tender, the sale would then be subject to my client's deed of trust. I know that the Nevada Supreme Court on at least one case... Now, that was a notice case, not a tender case. But the Nevada Supreme Court has said the sale was just void and everything's back to the way it is before. My personal feeling is that the first situation is probably the one that would take place. But obviously, we'd have to look at that. And I think that would be a question... Explain to me the difference. The first one is the sale is void. Everything's back to the beginning. And the second one is that the sale goes through but subject to your deed of trust. Correct, Your Honor. Meaning what? Meaning that you now have a deed of trust for a bazillion dollars more than the new owner paid for it. I believe it's $116,000, but yes, Your Honor, that we would have the deed of trust and we would have the ability to accelerate that. We'd have the ability to foreclose. And so, in other words, this woman, the person who bought the house and thought she was paying $7,000, essentially is going to have to pay $116,000 for the house. This is SFR in this case. This is SFR. This is an institutional property buyer. And yes. Well, and also, depending on what the Nevada rules are, if it's owner-occupied or not, there are several rules in Nevada court what you've got to do in order to foreclose. There's mediation rules. More complicated than that, isn't it? In the meantime, hasn't this property been rented out? I believe so, Your Honor. I believe this one has been rented out, yes. SFR tends to rent out its properties. Okay. All right. Thank you very much for your time. Thank you. We will have a one-minute. We will have a response now. Thank you. Good morning, Your Honor. Please support. Jason Martinez on behalf of SFR Investments, Pool 1. I actually want to go right to Judge Christian's question about the burden of proof, because      He has a lot of evidence. He has a lot of evidence. He has a lot of evidence. He has a lot of evidence. He has a lot of evidence. the Nevada Supreme Court actually talked about the very issue of burden of proof for a pre-sale payment. Well, what about Arlington West? Well, Arlington West is also a decision that does govern the idea of tender. It relates to the decision by the Nevada Supreme Court that's been referred to as Diamond Spur. It does govern the idea of tender. There's a paragraph on you here about, and there's a lot in this opinion, but part of it is about the tender. Well, Arlington West talks about the generalities of tender. No, it doesn't. I just read the paragraph in which it's extremely specific and exactly parallel to this. Right, but in that case, it was argued, number one, that there were no abatement charges. They did agree in Arlington West that those pieces would contain a supervisory burden. What the court says is the ledger did not indicate that the property had incurred any charges. Right. Do you ever argue that in the district court, that there aren't any maintenance or nuisance abatement fees owed in this case? Well, my client would never argue that. There are any? Well, not you. Well, I represent the purchaser. Well, excuse me. All right, but was that ever argued? Yeah, that's been argued by others. That there are? That there are fees? For sure. That there's something on the ledger that demonstrates that there are other fees due? In this case? There are abatement fees in this case? Yes. Yes. No, what we argued was that there's, in the context of the fact that they're in the statute, there is a super priority portion. Yeah, we understand the law. We're trying to figure out as a matter of fact, right, whether any are owed because today I can't tell whether that super priority portion was satisfied. Correct, and that's the problem. I think the question was, did SFR point to a specific item on the ledger? Why wasn't the district court, I agree with you that they've got a tough road to hoe if they are relying on equity, but why wouldn't we rule that the district court erred in this case because neither party established that it was entitled to summary judgment? We can't tell whether the super priority provision was satisfied. Because of the fact that the burden of proof lies with the bank and their failure to meet it doesn't give them summary judgment. But there's a piece of paper in the record, which they did put in the record, which is this ledger. And looking at that ledger, I don't see any such thing. No, I understand that. I will agree that if you look at the face of the ledger, which is Well, if that's your position, then Judge Berzon, I think, is right. No, no, no. What I mean It's either a contested issue of fact or it's not. The judge said, right, that I think in context very clearly thought that the lender hadn't overcome its burden. Correct. If your position is that the ledger shows no nuisance or abatement fees, why wasn't the district court incorrect about that? Because the problem is that, number one, this is a ledger from the collection company. Now, the HOA has its own ledgers and none of this is brief because this wasn't argued by the bank either. But just for the generality, just for the edification of the court really on this issue generally since the question is being presented. This ledger was not sent to it by the bank? Was not sent to them by the bank? Where'd they get this ledger from? This ledger was from the collection company, NAS. So it's not from the association itself. Okay, but it's all the bank had, right? It's all the bank had. Correct. They inquired, what do we have to do to satisfy the lien, and they got that ledger, yes? Well, that and they also had whatever value was listed in the notices, but yes, this is the entirety of the bank. Okay, so we need to know why the district court judge was wrong in deciding that they didn't overcome the burden, please. He's not wrong. He was absolutely correct that the bank failed to overcome its burden. But you just said that the ledger doesn't evidence any other unpaid portion of the super priority. No, I'm saying that it doesn't explicitly state here's an abatement charge or here is an abatement charge. Well, okay, but the only thing that I can see on it anywhere that even comes close as opposed to like late fees or something is one management company fee for $25. Am I missing something? No, that was up for the bank to come and improve that there were no abatement charges or maintenance charges that would be entitled to super priority status. This seems awfully picky, and it's not what was done in Arlington West. Arlington West did exactly what we're bringing us to do here. They looked at the ledger, they said, there's nothing on this ledger that looks to us like sort of a nuisance abatement charge. I believe in Arlington West there was also testimony from the association indicating there were no abatement charges. That's not what it says. It says the ledger did not indicate that the property, that's what it says. I know for this case there isn't any evidence of that indicating there were no abatement charges. Sorry, did you say, forgive me, did you say is or isn't? There is no evidence presented in the record or argument by the bank that there is not an abatement charge somewhere in this value. Well, but they kept saying, I mean, when they kept saying we owe the nine, they said, they recognized in their pleadings that if there was a nuisance abatement charge it would be part of the priority, super priority lien. And then they kept saying we only owe the nine months. Now, that seems to me to be a statement where there is maybe a missing clause that says because there is no nuisance abatement charge, but that isn't what they're saying. Once they say we know that if there's a nuisance abatement charge we have to pay it, and then they say we only owe for nine months, they're looking reality in the face, which is this piece of paper doesn't have any nuisance abatement charge. I mean, that's one interpretation of what they potentially do. Oh, give me another one. The other one is that if you actually look at the two letters sent by Miles Bauer, and I can cite the record specifically. Oh, please do. They're at WFZ 368 to 373. WFZ, sorry. And it's in the third volume, I believe. Oh, that's helpful. Okay. Yeah. And, sorry, the page numbers again? I want to make sure I've got them. 368 to 373. That's the first letter that was sent on January 4th, 2011, to which NAS ultimately responded with the ledger. And the second letter, which included the check, is WFZ 378 to 380. 378. Okay. I have the letters. What about them? Now, in both of those letters, they go through a discussion about what is the super-priority piece. And specifically, they cite to the very statute, which governs that, 116.3116. And what they say in there is it's a portion of the lien provided by the association is arguably senior. And then they go through a discussion entirely surrounding the fact that it is only nine months of assessments. There is not a single reference to abatement charges, payment charges in the letter. But that's the letter. That's the letter. So what? Correct. But they're citing the very statute, which gives you super-priority portion. And they actually excerpt the portion that talks about abatement charges. But they didn't do that in their pleadings. I understand that. But that's a justification for why, in their pleadings, all they're arguing is that all we have to pay is nine months. Right. All we pay is nine months. And they're wrong about that issue of law. And I'm trying to figure out whether there's a contested issue of fact about whether the super-priority was, in fact, satisfied. There is, because of the fact that the bank failed to come forward and demonstrate there were no abatement charges to make sure that their nine-month payment was sufficient. All right. And once again, we have a ledger. They did put in some evidence. They didn't put in no evidence, right? They put in some evidence. The evidence is this ledger, right? Yes. And the ledger doesn't show any nuisance abatement charges, does it? Explicitly, no. What does not explicitly mean? It shows a lot of things very explicitly. It shows everything it shows is explicit, and none of them is a nuisance abatement charge. Well, we actually don't know that because the bank didn't engage in that discovery to determine whether or not anything on here was an abatement charge. It has to be a real genuine issue of fact. And as I said, looking at it, the only thing I, everything else is very clearly labeled something or other that is not nuisance or abatement, right? Some of those, I guess, yes. Nuisance abatement or maintenance. Well, counsel, give me your best shot. What have you? Well, I don't know that I would necessarily need to point to a specific thing. Well, they put in some evidence and you put in no evidence. Let's put it that way. All right. They put in some evidence, which suggests to me very, quite strongly that there was no nuisance abatement charge or management or maintenance fee. And you put in no evidence to show there was. Now, why isn't that the appropriate way of looking at it? We didn't specifically identify anything that was an abatement charge. They didn't go in and negate anything that could have been. But counsel, your position is that their evidence, the ledger, was inadequate. Correct. Why was it inadequate? Well, because the burden of proof lies with the bank in that context. I get that. I get that part. I raise that. All right. But then we have something versus nothing. So why didn't they meet their burden of proof? Well, there's portions of the lien that are beyond this, just like Judge Mahan found, that could potentially be abatement charges. And he doesn't have to, he didn't identify anything specific. So why was your inadequate to show what they need to show? It's got to be because you think there's something in there that's arguably in the super priority portion that was, right, that wasn't satisfied by the check that they sent. What is it? What I'm saying is that the check they sent is equal to exactly nine months of assessments only. I understand that. Which means that if there were abatement charges and they failed to demonstrate that that payment satisfied those abatement charges, and that actually comes from the resources group decision by the Nevada Supreme Court. Yes. Where they talk about the burden. Okay. But there weren't. I mean, at least they have evidence that there weren't, and you have no evidence that there were. I don't think this evidence demonstrates there weren't, because this doesn't necessarily encompass everything the association may have. Well, it does. I don't actually know the answer. It adds up to the amount of money that the association asked for. Well, this is the ledger that NAS sent to the bank. Correct. And it adds up. They also sent a letter, said you owe us 3,000 so much money. This ledger adds up to 3,000 so much money, right? So it supposedly represents everything they're asking for. Well, here's one thing that we can talk about is the fact that there are collection costs included in this particular ledger. Now, collection costs normally do not carry a super priority status. However, under the statute, if those collection costs relate to abatement charges. Okay, but still, they put in something and you put in nothing. I don't have any affirmative evidence and neither do they. The problem is, I think in that circumstance. In those circumstances where collection costs, if they relate to abatement, then they are collectible as part of the super priority portion? Correct. So how do we know that? That's the problem, is that we don't know that, but the issue is. I don't think you even argued that though in your briefing. This is new news. Well, these are arguments that have come up post these briefings relatively old. The difficulty, and I'm going to stop, but the difficulty is everyone can see the basis for the district court's ruling. And so on appeal, it is time to be raising those arguments. I understand. I understand. And I want to point back to the resources group decision specifically talks about whose burden that lies with and what they actually have to prove. And the two factors that come down to a pre-sale payment are an amount sufficient to protect your interest and that it was delivered before the sale. Now, obviously, the issue here is whether or not the amount was sufficient to protect their interest. And in that circumstance, very moment in resources group, the failure of one of those factors upheld the sale as a valid sale and extinguished whatever interest that person was trying to And that was the concept in resources group. Similar concept to Judge Mahan's decision here where he's saying abatement charges have a super priority portion and bank, you have not met your burden to demonstrate there weren't any. And that's really the basis for my decision. But I would like to just briefly touch it. If you're inclined to consider there being an issue of fact, then I don't think that Arlington West dictates the outcome wherein the bank would ultimately win on appeal. I think what would have to happen is that it would have to be sent back down to determine whether or not there were abatement charges. Do you really want to do that? Do you want to do that? I would prefer you affirm. Is that a well-considered... Really? You think you can demonstrate that there was something else here? No. I said I would prefer you affirm. But if you're going to... Right. ...consider the fact that the bank is arguing... Yes. So, you would prefer a remand and some more proceedings... Versus losing? Absolutely. Yeah. All right. And you think there's some chance that you can demonstrate that there's something else in this ledger? Well, we should at least have the opportunity if you... I believe that there's a case in which there was a bank and that it would depend on us to prevent us from arguing those contract charges. What you have to do here is remand for us to be able to engage in that discovery. Okay. Thank you very much. Your time is up. I tried to give some time to... Thank you. Thank you. Thank you. Thank you very much. Sir. One minute. Yes. Your Honor, I think what has come to light mainly from the response is that SFR is insisting that my client prove a negative in the district court. It's take each and every line item that is not apparently on its face a maintenance or nuisance abasement charge and prove that it wasn't. And we all know it's impossible to prove a negative. You do have the burden. What is your response to his assertion that under some circumstances collection fees have to relate to nuisance abatement, that those are part of the super priority portion? Well, my response would be then if that is indeed the case, then the HOA, and this was the HOA through its agent, it came from its leisure agent. It would be on the HOA to make it very clear that it is nuisance abatement or maintenance in that ledger. The reason being that my client needed to properly calculate what the super priority lien amount would have been. And that doesn't really cancel. That didn't answer Judge Christen's question, which is in theory, would that be part of the super priority? And you seem to imply that the answer is yes. That's correct, Your Honor. We don't dispute that under the statute it would be. But the fact is... Why is Judge Mahan wrong in deciding that you hadn't met your burden counsel? Well, because, Your Honor, we can't... If the burden is that we have to prove beyond preponderance of the evidence that... Well, the comment you're setting up isn't helpful because what you did do, your client, I don't mean you, in the district court is continue to insist that you only had to pay nine months as a matter of law and did not raise that there was a dispute of fact. In fact, you didn't even raise that on appeal until, as I said, one line on page 29 is the first time I found it. So, I think it's an important point and you seem to be sidestepping it. Sorry. And I'm not trying to sidestep it, Your Honor. It's very difficult to sort of go back and reconstruct these things because it's funny, when you get to cases on appeal and they go through lawyers and they go through briefing and sometimes these issues become clearer. And I think with the benefit of hindsight, all of us, Ms. Miller, Mr. Martinez, and myself could say, oh, yeah, absolutely, this should have been discussed and this should have been really fleshed out because that's going to be the issue later. I think now with the benefit of hindsight, we say, well, there just isn't that much in the record. It's kind of there and everyone sort of, you know, glancingly referred to it and the court put these lines in the order that are now very difficult for us all to deal with. And I don't envy the court having to do that. That's what we do for a living, actually. Yes. Okay. Thank you. Thank you very much. Thank you. Thank you both for your argument. Thank you. The case of Carrington Mortgage Services versus SFR Investment Pool is submitted and we will take a short break. Thank you.
judges: Graber, Berzon, Christen